IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY,** | **CIVIL NO. 1:11-CV-1195** |
| **Plaintiff** | |
| v. | |
| **KINGSWAY AMERICA AGENCY, INC., f/k/a AVALON RISK MANAGEMENT, INC.; GLOBAL SOLUTIONS INSURANCE SERVICES, INC.; EAST-WEST ASSOCIATES, INC.; GARY C. BHOJWANI; and SCOTT D. WOLLNEY,** | The Honorable Sylvia H. Rambo |
| **Defendants** | |

# **M E M O R A N D U M**

Before the court are five motions to dismiss filed individually by Defendant Kingsway America Agency, Inc. f/k/a Avalon Risk Management, Inc. (Doc. 11), Defendant Gary C. Bhojwani (Doc. 12), Defendant Scott D. Wollney (Doc. 13), Defendant Global Solutions Insurance Services, Inc. (Doc. 19), and Defendant East-West Associates, Inc. (Doc. 38). These motions argue that the statute of limitations has expired for the alleged claims, or, alternatively, that the complaint fails to state a cause of action and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motions will be granted in part and denied in part.

**I.    Background**

    **A.    Parties**

Plaintiff, Lincoln General Insurance Company ("LGIC"), is a property and casualty insurance company based out of York, Pennsylvania. (Compl. ¶ 1.)

Defendant Avalon Risk Management, Inc. ("Avalon"),[1] was a provider of insurance and surety services located in Elk Grove Village, Illinois. (*Id.* ¶ 2.) It is alleged that at all times relevant to this complaint, Gary C. Bhojwani ("Bhojwani") and Scott D. Wollney ("Wollney") were officers and/or directors of Avalon. (*Id.* ¶¶ 5, 6.)

Defendant East-West Associates, Inc. ("East-West"), is a customs bond broker located in La Mirada, California. (*Id.* ¶ 4.) Defendant Global Solutions Insurance Services, Inc. ("GSIS") is an insurance producer located in Redondo Beach, California. In this capacity, GSIS solicits, underwrites and issues U.S. Custom Bonds as a sub-producer to Avalon. (*Id.* ¶ 3.) With regard to this case, it is alleged that GSIS and East-West worked together to issue custom bonds which exposed LGIC to millions of dollars of potential liability. (*Id.*)

### B. Facts

By way of background, U.S. custom bonds are federal instruments that guarantee the payment of import duties and taxes on goods entering the United States. (*Id.* ¶ 9.) These bonds are a financial promise between a surety, an importer (the principal), and the United States Customs and Border Agency Protection ("CBP") (obligee).[2] (*Id.*) The CBP also collects "anti-dumping" duties ("ADDs"). "Dumping" references when a company in one country exports goods to another

---

[1] Avalon is now Kingsway America Agency, Inc. ("Kingsway"). However, at all times relevant to the complaint, the name of Defendant was Avalon Risk Management and the court will thus refer to it as such. Avalon is now considered a wholly owned subsidiary of Kingsway, which is located in Toronto, Ontario, Canada. (Compl. ¶ 2.)

[2] There are two types of custom bonds: single transaction and continuous. A single transaction bond relates to a single, distinct import. In contrast, a continuous bond relates to all imports made during the term of the bond and are automatically renewed on an annual basis unless terminated by a party to the bond. (*Id.* ¶¶ 10, 11.) Furthermore, "[b]oth single transaction and continuous transaction bonds guarantee payment of import duties by the [importer] as well as the payment of liquidated damage claims made against the [importer] by CBP." (*Id.* ¶ 12.)

country at a price that is either lower than the price the company charges in its home market, or below the cost it takes to produce the product. (*Id.* ¶ 14.) If a company in the United States believes it is being injured by dumping from a foreign company, they may file a petition with the U.S. Department of Commerce ("DOC") and the U.S. International Trade Commission ("ITC"). (*Id.* ¶ 15.) If the DOC and the ITC determine that dumping is in fact occurring, ADDs may be levied against the offending company. (*Id.* ¶ 16.)

Between 2000 and 2004, the U.S. government allowed importers to post customs bonds instead of depositing cash in order to secure duties. (*Id.* ¶ 17.) During this time, shippers of commodities who were concerned that ADDs might be imposed on them were allowed to pre-apply for an ADD rate and post custom bonds instead of cash in anticipation that the ADDs would eventually be assessed against them. (*Id.* ¶ 18.)

At all times relevant to this complaint, Avalon was acting as LGIC's agent in managing LGIC's custom bonds program and LGIC allowed Avalon, under specific underwriting guidelines, to issue both single and continuous custom bonds. (*Id.* ¶¶ 19, 37.) Starting in January 2000, Avalon was under an Agency Agreement ("the Agreement") with LGIC under which Avalon would "solicit applications for risks, including insurance policies and bonds, to underwrite and issue policies and bonds, and to collect premiums thereon." (*Id*. ¶ 20 (citing Ex. A, Agency Agreement).) In addition, under the Agreement, Avalon agreed to "'solicit ,accept and bind risks in accordance with the underwriting rules, regulations and directions' given by LGIC." (*Id.* ¶ 22.) Avalon also agreed that the "dollar value of its binding authority would be specifically limited by a written notice which LGIC shall, from time to time, provide [Avalon], and [Avalon] will promptly notify LGIC in writing

of all risks written or bound in accordance with the directions and limitations in that written notice." (*Id.* ¶ 23.) Because Avalon was LGIC's custom bond agent, LGIC issued Power of Attorney status to Avalon, Bhojwani and Wollney. In accordance with this status, these Defendants agreed to "bind themselves, jointly and severally, their successors or assigns, to indemnify and hold [LGIC], its successors or assigns, harmless of and from any and all actions, suits, debts, claims or demands of any nature whatsoever arising under, or as a result of, any unauthorized use of said Power of Attorney." (*Id.* ¶ 27 (citing Ex. B, Power of Attorney Use Agreement).)

Starting in January 2003, Avalon and LGIC began operating under a "Program Manager Agreement" ("2003 PMA"). (*Id.* ¶ 28 (citing Ex. C, 2003 Program Manager Agreement).) Under the 2003 PMA, Avalon could only contract risks that were within LGIC's own underwriting and pricing standards, and also to report all bound risks to LGIC. (*Id.* ¶¶ 29, 30.) In addition, Avalon agreed to "accept business on behalf of LGIC written by properly licensed and qualified, professional insurance agents, solicitors and brokers ("sub-producers"), and to direct, supervise and coordinate the efforts of sub-producers" and to "solicit risks and classes of risks at limits and for lines of insurance . . . that, in their pricing and insurability, meet or exceed the underwriting and pricing standards from time to time established by [LGIC]." (*Id.* ¶¶ 31, 32 (citing 2003 PMA).) Avalon also agreed to maintain sufficient "competent and trained personnel, to produce, develop, underwrite and supervise" staff to monitor the business between Avalon and LGIC. (*Id.* ¶ 33 (citing 2003 PMA).) Furthermore, under the 2003 PMA "Avalon agreed to indemnify LGIC 'against any and all claims, suits, hearings, actions, damages of any kind, liability, fines, penalties, loss or expense, including attorneys' fees caused by or resulting from any allegation of any misconduct, error or omission or other act; or

breach of [the 2003 PMA] by' Avalon or 'Sub-producers.'" (*Id.* ¶ 36 (citing 2003 PMA).) It is also alleged that LGIC and Avalon worked under the policy that Avalon would ensure collateral for all bonds relating to ADDs unless the "principal had a tangible net worth of at least five times the probable maximum bonded exposure." (*Id.* ¶ 38.)

In 2002 and 2003, it is alleged that Avalon authorized Defendants East-West and GSIS to post hundreds of custom bonds on goods being imported from China. (*Id.* ¶¶ 39, 42.) GSIS possessed a computer program that provided customs brokers "with on-line access to a software application that can create and report single entry and continuous transaction bond forms on an 'on-demand' and 'as-needed' basis." (*Id.* ¶ 40.) Presumably using this program, it is alleged that "Avalon entered into an arrangement with GSIS and East-West that permitted East-West, without any individual, per bond authority, to print out fully executed LGIC customs bonds with Avalon's signature as attorney-in-fact (through Avalon's officers, Wollney and/or Bhojwani) for LGIC, East-West's signature for the principal and other evidences of legitimacy." (*Id.* ¶ 41.) These bonds were then posted for "fly-by-night" principals who imported the above listed agricultural goods from China. (*Id.* ¶ 42.) LGIC alleges that when issuing these bonds, East-West and GSIS were acting as agents for LGIC and, thus, owed fiduciary duties to LGIC. (*Id.* ¶ 43.)

When contracting with East-West and GSIS, it is alleged that Avalon informed these companies that they were not authorized to issue bonds for more than $1,000 per principal. (*Id.* ¶ 44.) Furthermore, it is alleged that East-West and Avalon were informed that they should first secure an application, a written indemnity agreement, and disclosure of financial information form for each principal wishing to receive a bond. (*Id.*) LGIC claims that because of the financial risk East-

West and GSIS knew their conduct posed to LGIC, they had a fiduciary duty to abide by all underwriting guidelines provided to them by Avalon.  (*Id.* ¶ 45.)  Likewise, LGIC claims that Avalon had a similar fiduciary duty to act with reasonable care in following all underwriting guidelines provided to it by LGIC.  (*Id.* ¶ 46.)  The complaint further alleges that Defendants Avalon, East-West and GSIS all breached their fiduciary duties when they issued custom bonds to "fly-by-night" principals who were, generally, unable to live up to their financial obligations when called upon to do so.  (*Id.* ¶ 48.)  LGIC claims Defendants did not follow LGIC's underwriting guidelines and/or properly evaluate the principals' financial conditions before issuing the principal customs bonds.  (*Id.* ¶¶ 48, 49.)  The bonds that were issued were to cover duties on goods from China which are normally subject to ADDs, such as, crawfish, honey, garlic and mushrooms.  (*Id.* ¶ 51.)

With regard to East-West and GSIS, LGIC alleges that these bonds violated the underwriting requirements which sub-producers to Avalon were bound because "(1) the bond principals had never demonstrated the financial condition required to meet LGIC's or Avalon's minimum requirements; (2) the bond principals had not posted sufficient collateral; and (3) the amount of the Bonds exceeded the maximums permitted by LGIC's underwriting guidelines and/or Avalon's sub-producer underwriting guidelines."  (*Id.* ¶ 52.)  Due to this alleged failure to follow the underwriting guidelines, LGIC was exposed to substantial risks totaling over $90 million because many of the importers Avalon and the sub-producers issued bonds to were not legitimate companies and "when it came time to pay, many had closed their doors, leaving LGIC on the hook for the duties."  (*Id.* ¶ 53.)  Furthermore, LGIC contends that because of this negligent behavior, as well as East-West's failure to properly implement security software to protect its online bond issuing software,

faulty bonds were not properly reported to either Avalon or LGIC, and thus LGIC was not able to timely recognize that underwriting guidelines were not being followed.  (*Id.* ¶ 54.)

LGIC claims it suffered its first loss on September 29, 2010, when it paid $100,000 to the CBP for a bond which was issued to a J.H. Brain for the period between July 15, 2002, and July 14, 2003.  (*Id.* ¶ 56.)  In addition, on May 5, 2011, LGIC suffered an additional loss when it had to pay $2,650, 277 in bonds for importers "Noodles for Lunch" and "Digicellet, Inc."  (*Id.* ¶ 57.)  Furthermore, LGIC predicts it will continue to have to pay bonds issued by Avalon, East-West, GSIS, Bhojwani and Wollney.  (*Id.* ¶ 58.)

### B.     Procedural History

On June 23, 2011, Plaintiff LGIC filed the instant complaint.  (Doc. 1.)  On August 25, 2011, motions to dismiss were filed by Defendants Avalon, Bhojwani and Wollney.  (Docs. 11, 12 & 13.)  Respective briefs in support were filed on September 5, 2011.  (Docs. 15, 16 & 17.)  On September 19, 2011, Defendant GSIS filed its motion to dismiss, (Doc. 19), and brief in support, (Doc. 20).  On September 26, 2011, LGIC filed briefs in opposition to Defendants Avalon, Bhojwani and Wollney's motions to dismiss.  (Docs. 25, 26 & 27.)  On October 6, 2011, LGIC filed a brief in opposition to GSIS's motion to dismiss.  (Doc. 28.)  Avalon, Bhojwani and Wollney filed reply briefs on October 11, 2011.  (Docs. 30 & 31.)  Subsequently, on January 3, 2012, Defendant East-West filed a motion to dismiss, (Doc. 38.), followed by a brief in support on January 17, 2012, and an additional brief in further support – without leave of court — on February 27, 2012.  (Docs. 39 & 41.)  LGIC filed a brief in opposition on February 2, 2012, (Doc. 40), and a motion to file a sur-reply brief to East-West's briefs on March 5, 2012, (Doc. 42).

On March 7, 2012, the court stayed the motion to file a sur-reply brief should the court later determine that additional briefing on the issues in question was needed. (Doc. 44.) At this time, the court does not believe additional briefing will be necessary. Therefore, all five motions to dismiss are ripe for disposition.

**II.      Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters

of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### III.    Discussion

Plaintiff brings the following claims: Count One- Breach of Contract and Indemnification against Defendants Avalon, Bhojwani and Wollney; Count Two- Breach of Fiduciary Duty against Defendant Avalon; Count Three- Breach of Fiduciary Duty against Defendants East-West and GSIS; Count Four- Breach of Fiduciary Duty against Bhojwani and Wollney; Count Five- Declaratory Judgment against Avalon, Bhojwani, Wollney, GSIS and East-West. The court will address these claims below.

#### a.    Count One- Breach of Contract and Indemnification, Defendants Avalon, Bhojwani and Wollney

In Count One, LGIC claims it entered in to the Agency Agreement with Avalon and that Avalon breached the agreement by failing to, *inter alia*: 1) "ensure that GSIS and East-West abided by the underwriting guidelines and policies established for the LGIC customs bond line of business"; 2) "supervise, oversee or direct GSIS and East-West"; 3) "train GSIS and East-West with respect to the underwriting standards and guidelines applicable to this line of business"; and 4) "promptly inform LGIC of the risks bound or bonds written by GSIS/East-West." (Compl. ¶ 62 (a)-(d).)

In addition, LGIC claims it entered into the 2003 PMA with Avalon and that Avalon failed to, *inter alia*: 1) "direct and implement the production, underwriting and other work necessary or incidental to the customs bond business for LGIC"; 2) "maintain sufficient staff of competent and trained personnel [] to produce, develop, underwrite, and supervise the business covered by the 2003 PMA"; 3) "accept business only from properly licensed and qualified [] professional insurance agents, solicitors and brokers"; 4) "comply with and ensure GSIS and East-West abided by the underwriting guidelines and policies established for the LGIC customs bond line of business"; 5) "direct, supervise, and coordinate GSIS and East-West"; 6) "train GSIS and East-West with respect to the underwriting standards and guidelines applicable to this line of business"; and 7) "inform LGIC of the risks bound or bonds written by GSIS/East-West."[3]  (*Id.* ¶ 66 (a)-(g).)

Finally, LGIC claims that Avalon, Bhojwani and Wollney's failure to properly supervise and ensure GSIS and East-West's compliance with LGIC's underwriting guidelines constituted a breach of the Power of Attorney Use

---

[3] LGIC also claims that under the 2003 PMA, Avalon has a duty to indemnify LGIC for the losses. (*Id.* ¶ 68.)

Agreement, and therefore, Avalon, Bhojwani and/Wollney must indemnify LGIC for any losses under that agreement. (*Id.* ¶¶ 69, 71, 73.)

Avalon, Bhojwani and Wollney all argue that this claim should be dismissed either because the statue of limitations has expired and/or because LGIC has failed to properly plead a breach of contract cause of action.

Generally, "in Pennsylvania, a breach of contract claim has a statute of limitations of four years." *Lutz v. Philips Electronics N. Am. Corp.*, 347 F. App'x 773, 776 (3d Cir. 2009) (citing *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 305-06 (3d Cir. 2008)); 42 Pa. Cons. Stat. § 5525(a). This statute of limitations begins to run when a party's claim "arises or accrues." *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002). "In a contract case, the cause of action accrues when there is an existing right to sue based on the breach of contract." *Id.* "In other words, '[a] claim under Pennsylvania law accrues at 'the occurrence of the final significant event necessary to make the claim suable.'" *CGB Occupational Therapists, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 136 (3d Cir. 1998)).

The complaint in this case is not a model of clarity regarding at what point LGIC alleges Avalon, Bhojwani and Wollney first engaged in acts that violated either the Agency Agreement, the 2003 PMA or the Power of Attorney Use Agreements. However, at this early stage of the litigation, the court will assume that the earliest LGIC knew about the alleged breach of contract was when it was forced to pay the CBP $100,000 on September 29, 2010, on bonds that were in effect in 2002 and 2003. This was the "final significant" event which made LGIC's claims actionable and it is within the applicable four-year statute of limitations. Therefore, Avalon, Bhojwani and Wollney's arguments fail in this regard *See id.*

Furthermore, at this stage of the litigation, the court finds that LGIC has properly pled a breach of contract claim against Avalon, Bhojwani and Wollney. To establish a breach of contract claim in Pennsylvania, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct.1999)).

Here, LGIC claims it entered into the Agency Agreement and the 2003 PMA with Avalon and the Power of Attorney Use Agreements with Bhojwani and Wollney, all of which are contractual relationships. LGIC next claims that these contractual relationships imposed a duty on Avalon, Bhojwani and Wollney and that these Defendants breached that duty. As a result of the breach of these duties, LGIC claims it suffered damages. Thus, LGIC has sufficiently pled a breach of contract claim against Avalon, Bhojwani and Wollney and this claim will prceed.

### b. Counts Two & Four- Breach of Fiduciary Duty, Defendants Avalon, Bhojwani & Wollney

LGIC also brings a breach of fiduciary duty claim against Avalon, Bhojwani and Wollney. Avalon, Bhojwani and Wollney seek to have these claims dismissed on the same basis as the breach of contract claim — *i.e.* because the claims are time barred by the applicable statute of limitations, and because they have not been properly pled. For the reasons that follow, these claims will also be allowed to proceed.

In Pennsylvania, unlike breach of contract claims, claims for breach of fiduciary duty have a two-year statute of limitations. *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005); 42 Pa. Const. Stat. § 5524(7). "Generally, the statute of limitations begins to run on a breach of fiduciary duty claim when the

trustee openly and unequivocally violates his duties." *Id.* (citing *Philippi v. Philippe*, 115 U.S. 151, 157 (1885) ("[T]he statute of limitations will begin to run from the time such repudiation and claim came to the knowledge of the beneficiary.") and *United States v. Rose*, 346 F.2d 985, 989-990 (3d Cir.1965) ("The statute of limitations begins to run against the trust beneficiary with respect to a suit against the express trustee, if at all, when he knows the trust has been repudiated or reasonably should have known it.")).

As with the breach of contract claim, the complaint could be more clear regarding exactly when the breaches by Avalon, Bhojwani and Wollney occurred. Although it is clear the alleged breaches took place in the 2000 through 2004 years, it is not clear when LGIC knew, or reasonably should have known, the breach had occurred. The only point that is clear from the facts in this regard is that LGIC knew Defendants breached this duty when LGIC was forced to pay $100,000 to the CBP in 2010. Therefore, at this early stage of the litigation, the court cannot conclude that LGIC knew, or should have known, of the breach before September 2010. Because the complaint was filed within two years of this date, this claim will be allowed to proceed.

As for the contention that the complaint has not properly pleaded a breach of fiduciary claim against Defendants Avalon, Bhojwani and Wollney, the court likewise disagrees. In Pennsylvania, a breach of fiduciary duty requires a plaintiff to first plead that a fiduciary or confidential relationship actually existed between the parties. Although there is "no precise formula [that] has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the

13

other's interest." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006) (quoting *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659, 662 (1966)).

In addition to the preliminary inquiry into the existence of a fiduciary duty, a plaintiff must also establish the following elements for a breach of such duty: "(1) That the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) That the plaintiff suffered injury; and (3) The defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Id.*

The court finds that LGIC has properly pleaded a breach of fiduciary duty. As a preliminary matter, there seems little doubt that Avalon, Bhojwani and Wollney possessed a relationship with LGIC that would "reasonably inspire confidence [in LGIC] that [Avalon, Bhojwani and Wollney would] act in good faith for [LGIC's] interest." *Id.* Furthermore, the complaint sufficiently alleges that these Defendants: (1) "negligently or intentionally failed to act in good faith and solely for the benefit of" LGIC when they allowed sub-producers to issue customs bonds that violated the underwriting requirements established by LGIC; (2) LGIC suffered monetary injuries; and (3) Avalon, Bhojwani and Wollney failed "to act solely for [LGIC's] benefit" when they negligently or intentionally issued faulty customs bonds and this "was a real factor [in] bringing about" LGIC's monetary loss. *Id.* Therefore, LGIC has properly pleaded breach of fiduciary duty claims against Avalon, Bhojwani and Wollney and Counts Two and Four of the complaint will proceed.

    **c.**    **Count Three- Beach of Fiduciary Duty, Defendants East-West and GSIS**

14

LGIC also asserts breach of fiduciary duty claims against East-West and GSIS. East-West and GSIS both claim no fiduciary relationship existed between LGIC and these Defendants, and thus, no breach of a fiduciary duty could have taken place.

Admittedly, the question of a fiduciary relationship between LGIC and the sub-producer Defendants is less simple than it was for LGIC and those Defendants with which it had a direct, contractual relationship with. East-West and GSIS's obligations to LGIC were far more attenuated than those of Avalon, Bhojwani and Wollney. However, this case is still in its infancy and only limited information is available to the court. According to the complain,t East-West and/or GSIS engaged in the following actions, *inter alia*: worked with Avalon, who was at that time representing LGIC, to post hundreds of custom bonds on goods imported from China (Compl. ¶¶ 39, 42); GSIS used custom computer software which allowed a company to create customs bonds on an "on-demand" or "as-needed" basis (*id.* ¶ 40); Avalon then entered into an agreement with East-West and GSIS that allowed these companies to issue fully executed custom bonds with Avalon's signature as attorney-in-fact for LGIC and East-West's signature for the principal (*id.* ¶ 41); when contracting with East-West and GSIS, it is alleged Avalon informed these companies they could not issue bonds for more than $1,000 per principal (*id.* ¶ 44); in addition, it is alleged East-West and GSIS were informed "they should first secure an application, a written indemnity agreement and disclosure of financial information from each principal wishing to receive a bond (*id.*); finally, it is alleged that beginning when East-West and GSIS entered into the initial agreements with Avalon and extending through when they learned of the risks they were binding LGIC to, the fiduciary duties in question were created, and subsequently breached (*id.* ¶¶ 43, 45).

Based on these facts, the court finds that LGIC has pleaded sufficient facts to show the existence of a fiduciary relationship between LGIC and East-West and/or GSIS. In addition, LGIC has sufficiently pled the elements of breach of fiduciary duty against East-West and/or GSIS. As previously stated, in order to establish a claim for breach of fiduciary duty, a plaintiff must show: "(1) That the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) That the plaintiff suffered injury; and (3) The defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006).

Here, LGIC alleges that Defendants East-West and GSIS: (1) "negligently or intentionally failed to act in good faith and solely for the benefit of" LGIC when they issued customs bonds which violated the underwriting requirements established by LGIC; (2) LGIC suffered monetary injuries; and (3) East-West and/or GSIS failed "to act solely for [LGIC's] benefit" when they negligently or intentionally issued faulty custom bonds and this "was a real factor [in] bringing about" LGIC's monetary loss. Therefore, LGIC has properly pled claims of breach of fiduciary duty against East-West and GSIS and Count Three of the complaint will be allowed to proceed.[4]

### d.     Count Five- Declaratory Judgment, All Defendants

---

[4] East-West also makes the argument that the claims are time-barred based on the two-year statutory limitations period for tort claims. However, for the same reason the claims will not be dismissed against any other Defendants on this basis, they will also not be dismissed against East-West.

Finally, in Count Five of the complaint, LGIC brings a declaratory judgment claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, against all Defendants claiming that LGIC "anticipates that it may be required to pay on additional Bonds issued by the reasons of the wrongful acts, errors, omissions and breaches of contract of GSIS, East-West, Avalon, Bhojwani and Wollney." (Compl. ¶ 96.) The court finds this count to be premature. "'In order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of the future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Tait v. City of Phila.*, 639 F. Supp. 2d 582, 590-91 (E.D. Pa. 2009) (quoting *Salvation Army v. Dep't of Cmty. Affairs of N.J.*, 919 F.2d 183, 192 (3d Cir. 1990)). Here, LGIC simply claims that it "anticipates it may be required to pay on additional Bonds . . . ." (Compl. ¶ 96.) LGIC does not cite to any pending payment requests from the CBP or any pending litigation from other parties. Plaintiff has failed to properly plead the probability or immediacy of a future event occurring and therefore, this claims will be dismissed.

**IV.** **Conclusion**

For the aforementioned reasons, Defendants' motions are denied on the basis of statute of limitations and failure to plead a plausible claim for relief. Plaintiff has properly pleaded claims of breach of contract and breach of fiduciary duty, and has done so within the applicable four and two-year statute of limitations.

However, Plaintiff's claim for declaratory relief will be denied as purely speculative. If facts arise which make Plaintiff's claim for declaratory relief real and substantive, Plaintiff is permitted to re-seek relief with this court.

An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated: May 7, 2012.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINCOLN GENERAL INSURANCE COMPANY,** | CIVIL NO. 1:11-CV-1195 |
| **Plaintiff** | |
| v. | |
| **KINGSWAY AMERICA AGENCY, INC., f/k/a AVALON RISK MANAGEMENT, INC.; GLOBAL SOLUTIONS INSURANCE SERVICES, INC.; EAST-WEST ASSOCIATES, INC.; GARY C. BHOJWANI; and SCOTT D. WOLLNEY,** | The Honorable Sylvia H. Rambo |
| **Defendants** | |

## ORDER

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED** as follows:

a) Defendant Kingsway America Agency, Inc., f/k/a Avalon Inc.'s ("Avalon") motion to dismiss (Doc. 11) is **DENIED** as to Counts One and Two. The motion is **GRANTED** as to Count Five.

b) Defendant Gary C. Bhojwani's motion to dismiss (Doc. 12) is **DENIED** as to Counts One and Four. The motion is **GRANTED** as to Count Five.

c) Defendant Scott D. Wollney's motion to dismiss (Doc. 13) is **DENIED** as to Counts One and Four. The motion is **GRANTED** as to Count Five.

    d)    Defendant Global Solutions Insurance Services's motion to dismiss (Doc. 19) is **DENIED** as to Count Three.  The motion is **GRANTED** as to Count Five.

    e)    Defendant East-West Associates's motion to dismiss (Doc. 38) is **DENIED** as to Count Three.  The motion is **GRANTED** as to Count Five.

    f)    Plaintiff's motion to file a sur-reply brief (Doc. 42) is deemed **MOOT**.

                                                                                s/Sylvia H. Rambo
                                                                           United States District Judge

Dated:  May 7, 2012.